## WHITE v. MOORE.

1. A note, resting upon vague and unsatisfactory proof, not established as an advancement.
2. An agreement that money advanced by a father to enable his son to obtain a medical education, should be regarded as an advancement, not established, there being no memorandum in writing, the son having been then probably a minor, and the proof not clear.
3. Money expended by a father for the professional education of his son is not an advancement. *Cooner* v. *May*, 3 *Strob. Eq.*, 185.
4. A note signed by a son to his father as surety for the purchase of land, is a debt and not an advancement; so, too, had the son been himself the purchaser, and he therefore the principal debtor.
5. Where a son signs as surety a note given to his father for the purchase of land which is afterwards conveyed to the son, the land is not an advancement.
6. Parol proof of declarations made thirty years before is uncertain and unsatisfactory.
7. After the debt of a mere surety is barred by the statute of limitations, is there any moral obligation resting upon him to pay it?
8. After twenty years a debt is regarded as paid. Where a distributee demands his share of an estate, he cannot be required to account for a note against him, *twenty-four years old*, found among the papers of the intestate, for the law will presume that it has been already paid.

Before COTHRAN, J., York, July, 1884.

The opinion sufficiently states the case.

*Mr. G. W. S. Hart,* for appellants.

*Mr. W. B. Wilson,* contra.

September 28, 1885.    The opinion of the court was delivered by

MR. JUSTICE McGOWAN.    John White, Sr., departed this life intestate in December, 1876.    Letters of administration upon his estate were granted to Jonathan Moore January 10, 1877. The intestate left a number of heirs, and among them, the plaintiffs, children of a predeceased son, Alexander White, who died in August, 1865.    In settling the estate of the intestate the administrator refused to allow these children a distributive share of their grandfather's estate, and on November 2, 1882, these proceedings were instituted in the Probate Court to require the same paid to them.    The administrator answered, that as he was informed, his intestate, John White, in his life-time, had "made advancements in money, land, and other property to his son Alexander, the father of petitioners, exceeding in the aggregate the portion distributable to any of the other children," &c.    On the trial in the Probate Court three items of advancement were claimed : *First.* A tract of land in Union County.    *Second.* The gift of a note for $300 ; *and, Third.* The expenses incurred by the father in graduating his son Alexander as a doctor of medicine.

It appeared that about the year 1853 the intestate conveyed the land by deed to one Jonathan Rhyne, receiving as the consideration part cash and the remainder in the note of Rhyne, with Alexander White as surety, which said note is now in the hands of the administrator of the intestate, showing a balance unpaid.    In September, 1859, Rhyne conveyed the land so purchased to Alexander White, his surety, who had become his son-in-law, taking his note for the purchase money.    Upon this note Alexander made a payment, leaving still due a balance about equal to that on the note of Rhyne to the intestate, with Alexander as surety.    Jonathan Rhyne was discharged in bankruptcy some time after 1865 and before the death of John White, and the note of Rhyne and Alexander White was not proved in bank-

ruptcy. Alexander White died in 1865, and there is no evidence that the note was presented for payment in the settlement of his estate ; nor does it appear in the inventory of the assets of John White's estate. The note was produced upon a reference in this case on February 13, 1883, by the defendant, Moore, and is endorsed with a single credit of $470, January 8, 1859, received from Alexander White, "said sum to be credited on J. Rhyne's note on A. White."

. Alexander, the eldest son of John White, was sent by his father to a medical college and was graduated as a doctor of medicine, completing his course at about the age of 22 or 23. Anderson Meacham testified that he once heard John say that Alexander agreed that if his father would make him a doctor, he would take it as his part of his father's estate. This was before Dr. White attended the lectures.

As to the note for $300, the only proof was the statement of James Scoggins, that he once heard a conversation between John White and wife of witness, in which, among other things, he said that he had once a note on Alexander for $300, and that Alexander had come to his house and wanted him (John) to give it to him, who told him he could not do so, as he had already given him more than any of the other children, when Alexander got mad and said that he would never again go to his house while he lived. Alexander left the house, when the mother prevailed on him to call Alexander back and give him the note, which was done—that the note was more than his share, and he would have it to account for to the other children, &c.

The probate judge found as matter of fact that there was not sufficient proof of any of the alleged advances, and decreed that the petitioners were entitled to their father's share in the estate of John White. Upon appeal to the Circuit Court Judge Cothran affirmed the judgment of the Probate Court, and the defendant appeals to this court upon the following grounds:

1. Because his honor erred in not sustaining each of the exceptions taken to the decree of the Probate Court.

2. Because his honor erred as matter of fact in holding that the land conveyed by John White, the intestate, through one Rhyne, to the son, Alexander, was not an "advancement;" and

as matter of law, under the facts proved, that the land so conveyed was no advancement.

3. Because his honor erred in holding that the note of Alexander White to his father, unpaid at Alexander's death in 1865, and never presented and proved against his estate, was not an advancement to the extent of the amount due thereon.

4. Because his honor erred in holding that said note was extinguished by lapse of time, when . the estate descended to the heirs at law of John White; and erred in extending the presumption of payment to the date of the commencement of this action, instead of limiting it to the devolution of the estate of the intestate at his death in 1876 ; and erred in considering the matter of such extinguishment in the absence of any exception by the petitioners to the decree of the Probate Court, wherein said debt is considered to be subsisting, no question thereon having been made at the hearing in either the Probate or Circuit Court.

5. Because his honor erred in holding that petitioners can recover a distributive share *per stirpes*, through their father, Alexander White, without taking into account and charging them with the indebtedness of their father to the estate, existing in full force at the death of the intestate ; and erred in considering the moral obligation to pay the debt in connection with the petitioners, instead of with their father ; and erred in holding that the moral obligation to pay the debt was not to be considered after the lapse of twenty years from maturity.

6. Because his honor erred in holding that the sums expended by intestate for Alexander White in his medical education and outfit were not advancements;   and erred in assuming the infancy of Alexander, at date of agreement with his father, to advance to him the extent of a medical education, no plea or proof of infancy having been interposed in the Probate Court ; and erred in not holding that, even if an infant at date of agreement, his continuance after majority to avail himself of the benefit of the agreement was a complete and valid ratification of the agreement for the entire period.

7. Because his honor erred in not holding that the note for $300, surrendered to Alexander by John White, was an advancement.

As to the note for $300, both the probate and the Circuit Judges held that the proof was too vague and unsatisfactory to establish it as an advancement, and we cannot say that such ruling was error.

As to the expenses incurred in graduating Alexander as a doctor of medicine. There was some testimony as to alleged declarations of the intestate and of Alexander to the effect that if the father would make him (Alexander) a doctor, he would ask nothing more from his father's estate. But there was no memorandum in writing to that effect, nor time or place indicated where the parties met and entered into any such agreement. The testimony as to casual declarations said to have been made many years ago, when Alexander was young and probably a minor, was considered insufficient to establish an agreement with the requisite clearness. Besides, as stated in the Circuit decree, it has been held in this State that "money expended on the education of a child, whether professional or general, is not an advancement." *Cooner* v. *May*, 3 *Stroh. Eq.*, 185.

Then as to the tract of land in Union County. It does not clearly appear whether it is the land itself or the note for the purchase money which is claimed to be an advancement. If the latter, there can hardly be a question that the probate and Circuit Judges were right in not allowing it, for several reasons. The note was really not that of Alexander, but of Rhyne, with Alexander as surety. It was required to be paid, and was, in fact, partly paid. If the land had been conveyed directly to Alexander, and he alone had given the note for the balance of the purchase money, it would have been merely a debt. "A note given by a child to a parent is presumed to be not an advancement, but a debt." *Abb. Tr. Evid.*, 154.

Nor can the land itself be considered as an advancement. John White, the father, did not convey it to his son, Alexander, but he sold it for value to Rhyne, who, six years after, sold it to Alexander, who paid part of the purchase money and gave his note for the remainder. It may possibly be that when Rhyne sold the land to Alexander it was understood that the balance of the purchase money to Rhyne might be paid by satisfying the remainder of Rhyne's note to John White. But Rhyne testified

that his note was to be paid, saying: "For land sold Dr. White he was to pay me, and I was to pay John White for amount due by me. I have never paid John White, nor has Dr. White ever paid me the entire amount. There is now enough due me from Dr. White on his note to pay amount owing by me to John White."

We agree with the Circuit Judge, who states, "There was some testimony as to declarations of the parties heard by witnesses, but unwritten words are, at best, but vanishing sound, * * * and when testified to after a lapse of thirty years, furnish an uncertain and unsatisfactory foundation on which to build. Hence my conclusion is, that in no sense can the land, or any of the transactions in regard to it, be justly held to be an advancement to Alexander."

But assuming that neither the bond nor the purchase money was properly an advancement by John White to his son, Alexander, it is still further insisted that the representative of Alexander (surety on Rhyne's note) certainly owed the balance of that note as a debt to his father's estate; and even if it is now too late to recover it at law, yet the debt still exists and the moral obligation to pay it still remains; and the children of Alexander are not entitled to their father's share in their grandfather's estate until that debt is accounted for upon the principle of equitable retainer announced in the case of *Wilson* v. *Kelly,* 16 *S. C.,* 219. It is true, that case held that a discharge in bankruptcy operates like a successful plea of the statute of limitations, not as payment or extinguishment of the debt, but only as a bar to an action thereon. Hence, when a debtor has been discharged in bankruptcy, while the legal obligation to pay the debt is gone, the moral obligation remains, because the debt is still unpaid, and it constitutes a sufficient consideration to support a promise to pay the debt; for if the debt were paid or otherwise extinguished, there would be no moral obligation to pay it.

We think, however, this case differs from that of *Wilson* v. *Kelly* in several important particulars. The debt of Alexander White for the land was really to Rhyne. He owed nothing to his father's estate except as surety. We are not aware that it

has ever been held that after the obligation of a mere surety has been barred by the statute of limitations or a discharge in bankruptcy there is left a moral obligation upon him, or, after his death, upon his representatives, to pay the debt; and we hesitate to make a new ruling to that effect.

But if by the subsequent purchase of the land from Rhyne, Alexander may be considered as substantially the principal in the debt to his father, it is urged even in that case that recovery of the debt is not only barred by the statute of limitations, but by lapse of time it is paid and extinguished, leaving no moral obligation remaining to' pay it. The presumption of payment began to run at the time of the last credit, January 8, 1859, during the life-time of the debtor, Alexander White; and, as we suppose, not being suspended either by the death of Alexander White in 1865, or that of John White in 1876, continued to run on until February 13, 1883, when the parties claimed the benefit of the note in this case, being *about twenty-four years;* so that it would seem that the period necessary to raise the presumption of payment had expired.

We cannot doubt that, in respect to the moral obligation to pay, there is a difference between a debt barred by positive statute and one declared *paid* by lapse of time. The doctrine of payment by presumption is stated in *Angell on Limitations* as follows: "By analogy to the statute of limitations, an artificial presumption has long been established that when payment of a bond or other specialty was not demanded for twenty years, and there has been no circumstance to show that it was still acknowledged to be in existence, the jury are to presume *payment* at the end of twenty years." "Payment in fact is the actual payment from the payer to the payee—payment in law is a transaction equivalent to actual payment." 2 *R. & L. Law Dict.*, tit. Payment, 941. Or as stated by Judge Wardlaw in *Stover* v. *Duren*, 3 *Strob.*, 450: "The presumption of payment, which, in reference to debts not embraced by the statute of limitations, arises from the lapse of twenty years, is not a presumption of law— that is, a rule which the court itself may apply—but is a presumption of fact, recognized by law, from which a conclusion ought to be deduced by a jury. It is, however, one of those

strong presumptions which shift the burden of proof, which from frequent occurrence have become familiar to the courts, and which, being constantly recommended to juries from motives of policy, have acquired an artificial force and become as important as presumptions of law," &c.

Where the lapse of time is complete, the presumption of payment arises, and in that case, as we understand, it is not alone the recovery on the note that is barred, but the debt itself is paid and extinguished.

The judgment of this court is that the judgment of the Circuit Court be affirmed.